FILED

2017 Oct-19  AM 11:21
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT FOR
# THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | | |
|---|---|---|
| **EDWIN WILLIAMS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No: 2:16-CV-01704-SGC** |
| | ) | |
| **WALGREEN CO.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## PLAINTIFF EDWIN WILLIAMS' OPPOSITION TO
## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

**COMES NOW,** Plaintiff Edwin Williams, who respectfully submits the following opposition to the Defendant's Motion for Summary Judgment:

## I.    Background/Introduction

On October 14, 2014, an elderly couple walked in the parking lot toward a drug store owned and operated by Defendant Walgreen Company ("Walgreen's") in Gardendale, Alabama.  Plaintiff Edwin Williams and his wife were both 76 years old at the time.  Mr. Williams walked on the left, and Mrs. Williams was on the right.

They walked toward the wheelchair ramp that goes to the sidewalk outside of the store.  Before Plaintiff Edwin Williams reached the sidewalk, he unexpectedly caught the toe of his shoe on a tripping hazard in the parking lot.

1

The tripping hazard caused Mr. Williams to lurch forward and fall outstretched on his face.  He suffered a severe and deep cut above his left eye, and a subdural hematoma brain injury.

The tripping hazard is a small concrete dome around a round metal cover, as depicted in the photos at Exhibits "A" and "B" of the Plaintiff's Evidentiary Materials in Opposition to the Defendant's Motion for Summary Judgment.  It was not marked as a hazard or marked in any other manner on the day of Mr. Williams' injuries, and it is still not marked as a hazard or in any other manner today.  The concrete dome and  metal cover are located in the asphalt parking lot, a few inches to the left of the wheelchair ramp.

Contrary to the Defendant's assertions in their Motion for Summary Judgment, the concrete dome and  metal cover are not "open and obvious".  As Plaintiff Edwin Williams testified in both his deposition (Deposition of Edwin Williams, Plaintiff's Evidentiary Materials, Exhibit "C",  page 30, lines 9 – 12) and by affidavit (Affidavit of Edwin Williams, Plaintiff's Evidentiary Materials, Exhibit "D", pages 2 - 3, ¶ 9, 12, 16),  the concrete dome and  metal cover were covered with a "black paint or grease or something" which disguised it. Additionally, as Mr. Williams also testified in his affidavit (Plaintiff's Evidentiary Materials, Exhibit "D", pages 2 - 3, ¶ 9, 12, 16), the black paint or grease (or other material) disguised the rise of the concrete and the additional hazard presented by

2

the extended lip on the round metal cover.  The black paint or grease (or other material) create an optical illusion because the tripping hazard appears to be level with the surface of the asphalt when a person looks at it despite the fact that the concrete and the lip of the metal cover rise almost an inch higher than the asphalt parking lot.  (Affidavit of Edwin Williams, Plaintiff's Evidentiary Materials, Exhibit "D", pages 2 - 3, ¶ 9, 12, 16, 18).

The deposition testimony of the Defendant's store manager, Mary Hyke, further supports the conclusion that the concrete dome and metal cover are not an "open and obvious" hazard.  The store manager testified in her deposition that she had worked at the drug store for many years, and she had never noticed this tripping hazard before.  Deposition of Mary Hyke, Plaintiff's Evidentiary Materials, Exhibit "E", page 32, lines 2 - 11; Affidavit of Mary Hyke, Plaintiff's Evidentiary Materials, Exhibit "F", page 2.  Obviously, the hazard was not as "open and obvious" as the Defendant contends.

## II.    The Defendant Presents Several Material Facts that Are in Dispute

The following numbered paragraphs are Plaintiff Edwin Williams' responses to the Defendant's "Statement of Facts", which begin at page 4 of their brief:

1. Admitted.

2. Admitted in part, denied in part.  Admitted that Mr. Williams had shopped at

the store for several years.  Denied that he was a "regular customer" at the time of his injuries because he only visited occasionally.  Affidavit of Edwin Williams, Plaintiff's Evidentiary Materials, Exhibit "D", page 2, ¶ 10.  Mr. Williams' visits to the Defendant's store had decreased in recent years because he changed his regular drug store to one "closer to our house."  Deposition of Edwin Williams, Plaintiff's Evidentiary Materials, Exhibit "C", page 17 (lines 18 - 22). Furthermore, he had never been around the tripping hazard before the date of his injuries, and had he had never seen it before.  Deposition of Edwin Williams, Plaintiff's Evidentiary Materials, Exhibit "C", pages 30 (line 20) to 31 (line2).

3.  Admitted that the Defendant has a leasehold possessory interest in the parking lot, which contains the tripping hazard.

4.  Admitted.

5.  Admitted in part, denied in part.  Admitted in that the Defendant stated (through the deposition testimony of its store manager, Mary Hyke) that the Defendant has no idea what purpose is served by the concrete dome with the round metal cover.  Denied, in that Plaintiff Edwin Williams has made a complaint about the tripping hazard by filing this lawsuit.

6.  Admitted in part, denied in part.  Admitted in that the affidavit of the store manager, Mary Hyke, states that inspections occur, but the Plaintiff's denial is based on the affidavit does not state that these inspections are safety inspections

related to tripping hazards in the parking lot.  Affidavit of Mary Hyke, Plaintiff's Evidentiary Materials, Exhibit "F", last unnumbered paragraph on page 1.

7. Admitted.

8. Admitted that Plaintiff Edwin Williams testified as stated by the Defendant in this numbered paragraph, but the testimony for this paragraph was taken out of the context of the subsequent explanation about why Mr. Williams did not see the concrete dome and circular metal lid, i.e., Williams Deposition, Plaintiff's Evidentiary Materials, Exhibit "C", page 30, lines 9 – 12.

9. Admitted that Mr. Williams did not see the concrete dome and circular metal lid.

10. Admitted.

11. Admitted.

12. Admitted in part, denied in part.  Admitted in that Plaintiff Edwin Williams had not seen the concrete dome with circular metal lid before.  Admitted that the tripping hazard could be seen except for the optical illusion created by "the black paint, grease or something" that the Plaintiff described in his deposition testimony. Williams Deposition, Plaintiff's Evidentiary Materials, Exhibit "C", page 30, lines 9 – 12.

13. Admitted that Plaintiff Edwin Williams suffered the injuries described on the incomplete list mentioned by the Defendant in this paragraph.  In addition to

those injuries, Mr. Williams also suffered a deep and large gash over his left eye, and a subdural hematoma brain injury.   Deposition of Edwin Williams, Plaintiff's Evidentiary Materials, Exhibit "C", page 61 (lines 16 - 20); Medical record of Edwin Williams showing the diagnosis of subdural hematoma, Plaintiff's Evidentiary Materials , Exhibit "H"; Affidavit of Edwin Williams, Plaintiff's Evidentiary Materials, Exhibit "D", page 2, ¶ 6.

14. Denied.  In the deposition passage cited by the Defendant, Plaintiff Edwin Williams was responding to a question about whether the Defendant would be at fault if the Plaintiff tripped on the curb instead of the concrete dome with the circular metal lid.  Plaintiff stated previously in his deposition, however, that he faulted the Defendant for allowing the tripping hazard to be "covered with a lot of black paint or grease or something.  It wasn't clear to where it would be easily seen.  And, of course, anything like that should be level with the pavement, and this wasn't."   Deposition of Edwin Williams, Plaintiff's Evidentiary Materials, Exhibit "C", page 30 (lines 7 - 14).  Additionally, Plaintiff Edwin Williams submits that the tripping hazard should have been designated by warning striped paint so pedestrians could avoid it.  Affidavit of Edwin Williams, Plaintiff's Evidentiary Materials, Exhibit "D", page 3 – 4, ¶ 19.

15. Admitted that Plaintiff Edwin Williams could not recall what he told the emergency room staff because he was dazed and confused.  Affidavit of Edwin

6

Williams, Plaintiff's Evidentiary Materials, Exhibit "D", page 2, ¶ 15. The

Plaintiff was dazed from his injuries, including the severe gash over his left eye

and his subdural hematoma brain injury.   Id.; Affidavit of Martha Williams,

Plaintiff's Evidentiary Materials, Exhibit "G", page 3, ¶¶s 16, 19, and 22.

16. Denied.  The Defendant takes Plaintiff Edwin Williams' testimony out of

context.  In the passage of the deposition cited by the Defendant, Mr. Williams did

not state that "he did not feel any type of sensation of any type where the sole of

his shoe might have caught on something before the accident."  Mr. Williams'

deposition testimony at the cited passage concerned what he recalled saying to the

emergency room staff, i.e., his deposition testimony was that he only recalled

saying to the staff that he had fallen, and that he did not recall saying that his "foot

got caught."  Deposition of Edwin Williams, Plaintiff's Evidentiary Materials,

Exhibit "C", page 49 (line 7) to page 50 (lines 23); page 53 (line 17) to page 54

(line 6).  The last complete sentence of this paragraph is admitted to the extent that

Mr. Williams testified at his deposition that he caught his shoe on the lip of the

metal lid on the concrete dome, and that he did not trip on the curb.  Deposition of

Edwin Williams, Plaintiff's Evidentiary Materials, Exhibit "C", page 57 (lines 1 -

13).

17. Admitted that the store manager, Mary Hyke, had never noticed the

tripping hazard despite being the senior management person in control of the

premises.  Denied in part because Plaintiff Edwin Williams had previously testified in his deposition about the conditions which obscured or disguised the tripping hazard, i.e., the tripping hazard was "covered with a lot of black paint or grease or something.  It wasn't clear to where it would be easily seen.  And, of course, anything like that should be level with the pavement, and this wasn't." Deposition of Edwin Williams, Plaintiff's Evidentiary Materials, Exhibit "C", page 30 (lines 7 - 14).  Additionally, Plaintiff Edwin Williams submits that the tripping hazard should have been designated by warning striped paint so pedestrians could notice it and avoid it.  Affidavit of Edwin Williams, Plaintiff's Evidentiary Materials, Exhibit "D", pages 3 – 4, ¶ 19.

18. Admitted.  The Plaintiff states that the tripping hazard which has been previously described, and which is depicted in the photos at Plaintiff's Evidentiary Materials, Exhibits "A" and "B", was the cause of his fall.

19. Admitted.

20. Admitted.


## III.   Additional Undisputed Material Facts

21. Plaintiff Edwin Williams did not see the concrete dome with the circular metal lid because "…it was all covered with a lot of black paint or grease or something.  It wasn't clear to where it would be easily seen."  Williams

8

Deposition, Plaintiff's Evidentiary Materials, Exhibit "C", page 30, lines 9 – 12.

22. The black paint or grease (or other material) disguised the height of the concrete dome and the additional hazard presented by the protruding lip on the round metal cover.   Affidavit of Edwin Williams, Plaintiff's Evidentiary Materials, Exhibit "D", 2 – 3, ¶¶s 9, 12, 16, and 18.

23.This "black paint or grease or something" disguised the tripping hazard because it appeared to be even or level with the surface of the asphalt parking lot. Affidavit of Edwin Williams, Plaintiff's Evidentiary Materials, Exhibit "D", 3, ¶ 16.

24.  The concrete dome and the lip of the metal cover are almost an inch higher than the asphalt on the parking lot.  Affidavit of Edwin Williams, Plaintiff's Evidentiary Materials, Exhibit "D", ¶ 18.

25. The concrete dome with metal lid was not level with the pavement. Deposition of Edwin Williams, Plaintiff's Evidentiary Materials, Exhibit "C", page 30, lines 12 – 14.

26. Mr. Williams' attention was concentrated on his wife as she stepped up on the sidewalk when he tripped and fell due to the tripping hazard.  Affidavit of Edwin Williams, Plaintiff's Evidentiary Materials, Exhibit "D", page 3, ¶ 12.

27. Mrs. Williams testified that her husband tripped on the concrete dome with circular metal lid.  Affidavit of Martha Williams, Plaintiff's Evidentiary

Materials, Exhibit "G", page 2, ¶¶s 9 and 12.

28. Plaintiff Edwin Williams fell and struck his head on the concrete at the drug store. Affidavit of Martha Williams, Plaintiff's Evidentiary Materials, Exhibit "G", page 2, ¶¶s 13 - 14.

29. Plaintiff Edwin Williams was dazed and confused after he fell and struck his head. Affidavit of Martha Williams, Plaintiff's Evidentiary Materials, Exhibit "G", page 3, ¶ 16.

30. On the way to the emergency room, Plaintiff Edwin Williams continued to be dazed and confused. Affidavit of Martha Williams, Plaintiff's Evidentiary Materials, Exhibit "G", page 3, ¶ 19.

31. The hospital staff interviewed Plaintiff Edwin Williams outside of the presence of Mrs. Williams, while she was parking the family car. Affidavit of Martha Williams, Plaintiff's Evidentiary Materials, Exhibit "G", page 3, ¶¶s 20 - 21.

32. Mr. Williams was still dazed and confused after his wife joined him in the emergency room, which was after the emergency room staff interviewed him. Affidavit of Martha Williams, Plaintiff's Evidentiary Materials, Exhibit "G", page 3, ¶¶s 21 - 22.

33. No one at the hospital asked Mrs. Williams how the incident had occurred. Affidavit of Martha Williams, Plaintiff's Evidentiary Materials, Exhibit "G", page

3, ¶ 23.

## IV.   Alabama's Substantive Law Sides with the Plaintiff

### A.   The tripping hazard was not "open and obvious"

The "open and obvious" defense is an affirmative defense, and the burden of proving an open and obvious condition rests with the store which is trying to assert the defense.  Ex parte Neese, 819 So. 2d 584 (Ala. 2001).  The Defendant offers no such proof.

The case of Harding v. Pierce Hardy Real Estate, 628 So.2d 461, 463 (Ala. 1993) supports a conclusion in favor of the Plaintiff.  In Harding , the Alabama Supreme Court overturned a summary judgment granted by the trial court.  The Harding plaintiff was walking through the plaster aisle at an 87 Lumber building products store.  The plaintiff was an invitee who needed to purchase building supplies for a home construction project.  The store had left many boxes thrown in the middle of the aisle.  Another store customer was walking ahead of the plaintiff, and the plaintiff followed.  The boxes were plainly visible strewn in the aisle.  In the Harding case, however, the plaintiff testified that his attention was focused upward and away from the tripping hazard because he was looking at the back of the customer in front of him as they walked through the crowded aisle, and that he did not look down at the boxes on the floor which caused him to trip and suffer

injuries.  Harding, 628 So.2d at 462.

In the instant case, Plaintiff Edwin Williams testified that his attention was focused on his wife as she stepped up on the sidewalk at the store.  Affidavit of Edwin Williams, Plaintiff's Evidentiary Materials, Exhibit "D", page 3, ¶ 12.  Just like the plaintiff in the Harding case, Mr. Williams did not perceive the danger because his attention was focused up and away from the tripping hazard.  Id.

The facts from the instant case are also analogous to those in Hunter v. Durr Systems, Inc., 2:06-cv-00411-WHA-SRW (M.D.Ala. April 24, 2007) (Memorandum Opinion and Order, Doc. #41), where Judge Albritton declined to grant summary judgment.  The plaintiff in Durr Systems was a photographer hired to photograph the robotic painting apparatus at the Hyundai assembly plant.  The robotic painting equipment was mounted with other overhead equipment.  On the plant floor where the plaintiff would eventually walk, a grate covering a drain had been removed, which exposed a drainage box.  The plaintiff waited for the assembly line of new cars to move forward, and she followed one of the cars while she watched and photographed the robotic equipment above her.  With her attention focused upward, the Durr Systems plaintiff fell into the open drainage box while moving forward and taking pictures of the overhead robotic spraying mechanism.  She never saw, perceived or understood the dangerous condition because the plaintiff was looking upward.  Durr Systems, 2:06-cv-00411

(Memorandum Opinion and Order, Doc. #41), at 6 – 7.

Judge Albritton held that questions about "open and obvious" dangers frequently involve factual disputes which often preclude summary judgment. In his Memorandum Opinion and Order denying summary judgment in the Durr Systems case, Judge Albritton wrote,

> Alabama law recognizes that '[t]he question of whether a danger is open and obvious is generally one of fact.' Howard v. Andy's Store for Men, 757 So.2d 1208, 1211 (Ala. Civ. App. 2000). Specifically, the Alabama Supreme Court has stated:
>
> "*[S]ummary judgment is proper on the issue of whether a defect was open or obvious when the undisputed evidence shows that the plaintiff was aware of the danger, appreciated the danger, and acted more carefully because of the perceived danger*. However, when the evidence is disputed, 'questions of open and obviousness of a defect or danger and of the plaintiff's knowledge are generally not to be resolved on a motion for summary judgment.' Harding v. Pierce Hardy Real Estate, 628 So.2d 461, 463 (Ala. 1993) (quoting Harvell v. Johnson, 598 So.2d 881, 883 (Ala. 1992)."
>
> Accordingly, unless the facts indisputably demonstrate that a danger was open and obvious, summary judgment is not appropriate.

Durr Systems, 2:06-cv-00411 (Memorandum Opinion and Order, Doc. #41), at 5 – 6 (emphasis added).

In the case at bar, Plaintiff Edwin Williams was not aware of the danger, did not appreciate the danger, and had no opportunity to act more carefully – just like

the plaintiff in the <u>Harding</u> and <u>Durr Systems</u> cases.  Plaintiff Edwin Williams'

attention was focused on his wife as they walked toward the Defendant's store

when he tripped and fell due to the tripping hazard.  Affidavit of Edwin Williams,

Plaintiff's Evidentiary Materials, Exhibit "D", page 3, ¶ 12.  Furthermore, Mr.

Williams had never seen the tripping hazard before the day it caused him to fall.

Williams Deposition, Plaintiff's Evidentiary Materials, Exhibit "C", page 30, lines

2 – 5.

Both the <u>Harding</u> case and the <u>Durr Systems</u> case demonstrate that this

Court should overrule the Defendant's motion for summary judgment because the

tripping hazard was not "open and obvious" to Plaintiff Edwin Williams given the

facts of the instant case.  Additionally, Plaintiff Edwin Williams testified that he

did not see the concrete dome with the circular metal lid because "…it was all

covered with a lot of black paint or grease or something.  It wasn't clear to where it

would be easily seen."  Williams Deposition, Plaintiff's Evidentiary Materials,

Exhibit "C", page 30, lines 9 – 12.  The black paint or grease (or other material)

disguised the height of the concrete dome and the protruding lip on the round metal

cover.  This disguised the tripping hazard because it appeared to be even or level

with the surface of the asphalt when a person looks at it despite the fact that the

concrete and the lip of the metal cover are almost an inch higher than the pavement

on the parking lot.  Affidavit of Edwin Williams, Plaintiff's Evidentiary Materials,

Exhibit "D", page 3, ¶ 18.

**B. <u>The Defendant uses the *Miller, Edwards, and Butler* cases for "red herring" arguments</u>**

Several of the Defendant's cited cases (i.e., *Miller, Edwards, and Butler*) demonstrate that the instant case is in a special subset of elevation irregularity cases with different rules about what creates a genuine issue of material fact, and the Defendant's duty to inspect the premises. The cases cited by the Defendant actually increase the Defendant's burden to prevail on its motion for summary judgment.

The claim in the case of <u>Miller v. Liberty Park Joint Venture, LLC</u>, 84 So.3d 88, 94 (Ala. Civ. App 2011), was about whether a gap between the fence and a tennis court was a dangerous condition, facts that are not analogous to the instant case. The <u>Miller</u> case did contain the following useful quotation for the instant case, however:

> "In Alabama, however, ***whether an elevation irregularity in a sidewalk, curb, or threshold constitutes an unreasonably dangerous condition or defect has***, so far as we are able to tell, ***always been held to be an issue of fact*** when the plaintiff has presented evidence indicating that the irregularity creates a danger."

<u>Id</u>., 84 So.3d at 93 (emphasis added). The case at bar involves an elevation irregularity in the parking lot. An elevation irregularity should "always… be an issue of fact" according to the <u>Miller</u> opinion, which means that the Court should

overrule the pending motion for summary judgment.

Defendant also cites Edwards v. Intergraph Services Company, 4 So.3d 495 (Ala. Civ. App. 2008).  Edwards was not an elevation irregularity case and it is not particularly applicable to the instant case.  Yet, the Edwards case provides helpful guidance for the Court because Edwards distinguishes its facts from the Alabama "line of cases dealing with whether elevation irregularities in sidewalks, curbs, or thresholds constitute tripping hazards" as we have in the instant case.  Id., 4 So.3d at 505.  Edwards specifically put the elevation irregularity cases into "a subset of the failure-to-inspect cases", which makes Defendant Walgreen responsible for discovering the elevation difference involved with the tripping hazard in the instant case by a "reasonable inspection."  Id., at 506.

In other words, the Defendant knew or should have known about the elevation irregularity in the case at bar with the "reasonable inspections" that are required by the precedent cases of Miller and Edwards.  Consequently, the number of inspections the Defendant claims to have conducted actually works against them.

The Defendant asserts that the Defendant and others inspect the parking lot regularly, and no one has ever reported this elevation irregularity tripping hazard, where the elevation of the tripping hazard adjacent to the wheelchair ramp is nearly an inch higher than the pavement on the parking lot.  Defendant's Brief in Support

16

of Motion for Summary Judgment (Doc. # 16) at the bottom of page 13; Affidavit of Mary Hyke, Plaintiff's Evidentiary Materials, Exhibit "F", last unnumbered paragraph on page 1. This assertion by itself, however, admits the Defendant's negligence and/or wantonness in that the Defendant failed to discover the elevation irregularity at issue in the instant case despite its duty under the Edwards case to do so, and despite allegedly making numerous inspections. Furthermore, the affidavit by the Defendant's manager failed to state whether the inspections were made to discover elevation irregularities and other tripping hazards, or for other purposes (e.g., fire hazards). Affidavit of Mary Hyke, Plaintiff's Evidentiary Materials, Exhibit "F", last unnumbered paragraph on page 1.

The case of Mims v. Jack's Restaurant, 565 So.2d 609 (Ala. 1990), helps illustrate the point related to whether the Defendant in the instant case had actual or constructive notice of the tripping hazard. In Mims, the plaintiff was leaving a Jack's restaurant when she tripped on a loose threshold which was missing some screws. No previous incidents related to the threshold had been reported to the store. The plaintiff testified in her deposition that the threshold had been "raised up about a half an inch", which caused her to trip and injure her ankle. Id., at 610.

The trial court granted summary judgment and the plaintiff appealed. The Alabama Supreme Court reversed the trial court and stated,

> The question of whether the threshold, if it was defective,
> had been defective for such a period of time that Jack's
> should have discovered the defect, was for the jury....
> [I]n cases where the alleged defect is a part of the
> premises (in this case, a loose threshold in the main
> entrance of a restaurant), once a plaintiff has made a
> prima facie showing that a defect in a part of the
> premises has caused an injury, then the question whether
> the defendant had actual or constructive notice of the
> defect will go to the jury, regardless of whether the
> plaintiff makes a prima facie showing that the defendant
> had or should have had notice of the defect at the time of
> the accident.

565 So.2d at 610.  Likewise, the question of whether the tripping hazard in the instant case should have been discovered by the numerous inspections allegedly performed by the Defendant over the years is a matter for the jury as well.

Finally, the case of Butler v. AAA Warehousing and Moving Company, 686 So.2d 291 (Ala. Civ. App. 1996), is not an appropriate analogy for the case at bar. Butler is not an elevation irregularity case.  In Butler, the defendant erected metal Mardi Gras viewing stands that consisted of several platforms for people to stand on, with a 5 inch vertical space for the next level up.  The plaintiff was watching a Mardi Gras parade when another spectator bumped her, which caused her foot to get caught in one of the 5 inch vertical spaces.  Id., at 292.  Butler has nothing to do with the subset of elevation irregularity cases, and serves no purpose in the analysis of the instant case.

## C. **The Defendant incorrectly states that the number of years without an injury determines the outcome of the instant case**

The Defendant placed great emphasis on its belief that if a tripping hazard exists for a number of years and no one else has been injured, Plaintiff Edwin Williams should be denied his day in Court.  The Plaintiff, however, counters with the following:

### 1. **The Defendant does not offer any facts in evidence that tell us how long the concrete dome with metal lid have been at the drug store**

The Defendant does not present any evidence about how long the tripping hazard at the drug store existed.  Consequently, we do not know whether the Defendant's length of time argument even pertains to this case.

### 2. **Assuming that the tripping hazard has been at the drug store since it was built (i.e., 2003), numerous Alabama Supreme Court trip and fall cases appear to be situations where the tripping hazard was in existence from the date the building was constructed**

Numerous Alabama appellate court opinions have occurred concerning elevation irregularities which presumably have existed for many years before the plaintiffs in those cases were injured.  The following are a few of the many trip and fall cases which involved elevation irregularities, with the irregularities apparently built into a building at the time of the buildings' original construction (or during a major renovation):  Stephens v. City of Montgomery, 575 So.2d 1095 (Ala. 1991)

19

(city concrete sidewalk with a 1 inch difference in height caused a trip and fall situation; summary judgment reversed); <u>Howard v. Andy's Store for Men</u>, 757 So.2d 1208 (Ala. Civ. App. 2000) (concrete step into a store caused a trip and fall); <u>Mann v. Smith</u>, 561 So.2d 1112 (Ala. 1990) (concrete steps caused a customer leaving the store to slip and fall); <u>Bogue v. R&M Grocery</u>, 553 So.2d 545 (Ala. 1989) (significant drop in elevation from the doorway to the outside parking lot caused a trip and fall).

None of those cases resulted in a decision for the defendant based on the length of time that the tripping hazard existed.  In each of these cases, none of the defendants raised the notion that the long term existence of the tripping elevation irregularity was a legitimate defense all by itself, or even a defense at all.  We can safely infer that if the long term existence of a tripping hazard were a legitimate defense to an elevation irregularity case, those defendants would surely have raised it.  Plaintiff Edwin Williams has attempted to find an elevation irregularity case where the length of time of the tripping hazard's existence is a defense to the injuries caused to a victim.  We have not yet found such a case.

### 3. <u>The Defendant's theory ignores the fact that any elevation irregularity is merely a tripping hazard waiting for the wrong circumstances to occur</u>

The tripping hazard in the instant case may have been in existence for several years.  There is no way to be certain about how long it has existed from the

evidence currently before the Court.  In any event, however, it was a booby trap -

armed and waiting for its elderly victim to trip on it.  Mr. Williams simply

happened to be the unfortunate person who finally discovered it on a day when he

and his wife walked together to visit the Defendant's store.


**D. <u>The Defendant's numerous "inspections" of the parking lot that</u>**
   **<u>repeatedly failed to detect the elevation irregularity at issue in this</u>**
   **<u>case demonstrates wantonness</u>**

The Alabama Court of Civil Appeals case of <u>Edwards v. Intergraph Services</u>

<u>Company</u>, 4 So.3d 495 (Ala. Civ. App. 2008), places the burden on the Defendant

to properly inspect the drug store's parking lot for elevation irregularities by a

"reasonable inspection."  <u>Id.</u>, at 506.  Store manager Hyke testified that the

Defendant's inspections have been occurring for many years.  Affidavit of Mary

Hyke, Plaintiff's Evidentiary Materials, Exhibit "F", last unnumbered paragraph of

page 1.   Yet, the fact that the tripping hazard in this case was never detected

demonstrates that a failure to properly or adequately inspect repeatedly occurred.

The case of <u>Western Railway of Alabama v. Still</u>, 352 So.2d 1092 (Ala.

1977), demonstrates that testimony about repeated inspections by the Defendant

which failed to alert the Defendant to the tripping hazard in the instant case support

a claim for wantonness.  In <u>Western Railway</u>, the defendant railroad inspected a

railroad crossing twice a week.  The defendant railroad's inspections failed to

21

discover the design of the crossing could make an automobile lose control if it

exceeded a certain speed.   Id., at  1094.  The Alabama Supreme Court wrote,

> In this case, the jury could conclude that the railroad
> crossing was maintained in a negligent fashion and that
> the railroad knew of this because of bi-weekly
> inspections by its roadmaster. ....
>
> The duty of the railroad to maintain its crossing in proper
> repair for the traveling public and its bi-weekly
> inspection of the premises are sufficient facts from which
> the jury could infer knowledge by the railroad of the
> attendant circumstances constituting negligent conduct. It
> was not error to submit the wanton count to the jury.

Id., at 1097.[1]

Likewise, it is wanton in the instant case that the Defendant's numerous

inspections of the parking lot never discovered the concrete dome and metal lid,

which is almost an inch higher than the asphalt parking lot, and which is very close

to the wheelchair ramp.  One or two inspections that missed the tripping hazard

might arguably be merely negligence, but the failure to discover the tripping

hazard after numerous inspections is inexcusable – and wanton.

### E. The concrete dome with circular metal lid caused Plaintiff Edwin Williams to fall

Plaintiff addresses this point briefly because it is raised in one short

---

[1] In all candor, the Western Railway case was one adjudicated under the scintilla rule.  Plaintiff is using the Western Railway case, however, to demonstrate that a defendant's failure to discover hazards after repeated inspections can and has been used to support denying a motion for summary judgment on a wantonness claim.  In the instant case, Defendant's store manager, Mary Hyke, apparently attempts to testify that the Defendant inspected the parking lot for many years without discovering the tripping hazard which rises almost an inch above the level of the paved parking lot.

paragraph of the Defendant's brief.  Defendant's Motion for Summary Judgment and Supporting Brief, Doc. #16, at 13 – 14.  Defendant argues that, according to the medical records, Plaintiff Edwin Williams told the emergency room staff that he tripped on the curb when he fell.  Id.  Plaintiff Edwin Williams, however, testified in his deposition that he did not recall telling the emergency room staff anything other than he fell.  Deposition of Edwin Williams, Plaintiff's Evidentiary Materials, Exhibit "C", page 49 (line 7) to page 50 (lines 23); page 53 (line 17) to page 54 (line 6).  Therefore, there is a genuine issue of material fact on this point.

Furthermore, Mrs. Williams testified by affidavit that her husband was dazed and confused immediately after being injured, and while she drove him to the emergency room.  Affidavit of Martha Williams, Plaintiff's Evidentiary Materials, Exhibit "G", page 3, ¶¶s 16, 19.  The medical staff did not interview Mr. Williams in her presence because she had to park the family car, and she rejoined him after the intake interview.  Id., at ¶¶s 20 – 21. At that time, Mr. Williams was still dazed and confused.  Id., at ¶¶s 20 – 21.  No one asked her how Mr. Williams' injuries occurred.  Id., at ¶ 23.

Mrs. Williams, however, testified about the sequence of events that caused her husband's injuries, i.e., that Mr. Williams caught the toe of his shoe on the tripping hazard, that he had not yet reached the curb or sidewalk when he fell, and that he was in the parking lot when he fell.  Id., at ¶¶s 9 – 13.

## V.   Conclusion

The Alabama Supreme Court's case of <u>Harding v. Pierce Hardy Real Estate</u>, 628 So.2d 461, 463 (Ala. 1993), demonstrates why this tripping hazard was not "open and obvious" to Plaintiff Edwin Williams, whose attention was focused on helping his wife up the wheelchair ramp.  The case of <u>Hunter v. Durr Systems, Inc.</u>, 2:06-cv-00411-WHA-SRW (M.D.Ala. April 24, 2007) (Memorandum Opinion and Order, Doc. #41) (J. Albritton) shows how another Federal District Judge applied the lessons from <u>Harding</u> to overrule a similar motion for summary judgment.  The elevation irregularity line of cases (e.g., <u>Miller v. Liberty Park Joint Venture, LLC</u>, 84 So.3d 88, 94 (Ala. Civ. App 2011), and <u>Edwards v. Intergraph Services Company</u>, 4 So.3d 495 (Ala. Civ. App. 2008)) provide further support for Plaintiff Edwin Williams' position because elevation irregularity cases "always [present]… an issue of fact."  The Defendant's failure to discover the tripping hazard, despite (1) its proximity to the wheelchair ramp, (2) the fact that it is disguised by black paint or other substances, and (3) the fact that it is nearly an inch higher than the pavement, demonstrates that the Defendant wantonly failed to carry out its duties under <u>Edwards</u> to inspect for such a hazard.  Finally, the failure to discover the tripping hazard despite numerous inspections was wanton conduct.

Plaintiff Edwin Williams respectfully requests the Court to overrule the Defendant's motion for summary judgment.

24

Respectfully submitted,

s/ James S. Roberts, Jr.
James S. Roberts, Jr.
Attorney for Plaintiff
ASB-8991-R81J


Of Counsel:
Jim Roberts Law Firm, LLC
1123 Main Street
P.O. Box 639
Gardendale, AL  35071
205-285-8290
Fax: 205-631-5078


## CERTIFICATE OF SERVICE

I certify that on this the ___ day of October, 2017, I have served a copy of this pleading on the counsel listed below and any other counsel of record by the notice provided by the electronic filing system provided by the United States District Court:

John W. Clark, Jr., Esq.
Eric D. Bonner, Esq.
Clark, Hair & Smith, P.C.
100 Urban Center Drive, Suite 125
Birmingham, AL 35242

s/ James S. Roberts, Jr.
Of Counsel